HALL, Judge.
The City of New Orleans brought this expropriation proceeding to acquire a certain piece of property for a fire station. On December 6, 1968 judgment was rendered awarding compensation for the property to the defendant-owners, Moses Lew, Sylvia Lew and Dora Lew in the sum of $30,029.00 plus costs and expert’s fees together with interest thereon from date of judgment. The City of New Orleans appealed sus-pensively on February 10, 1969. Sylvia Lew died intestate on February 23, 1969 leaving as her sole and only heirs at law, her brother and sister, Moses Lew and Dora Lew, and by order of this Court dated March 12, 1969 Moses Lew and Dora Lew were substituted as sole defendants-appel-lees herein.
Moses Lew and Dora Lew answered the appeal praying that the compensation awarded for the property be increased to the sum of $30,600.00.
The property involved herein is situated in the First District of the City of New Orleans and is designated as lot 4 of Square 286. The lot forms the uptown lake corner of Melpomene and South Rampart Streets and measures 32' 11" 6'" front on Melpomene Street by a depth and front on South Rampart Street of 127' 9". It is zoned J-Industrial. Melpomene Street is a paved two-way street with a wide neutral ground. South Rampart is also a paved two-way street. The improvements on the lot consist of an old two-story brick building, a garage, and a small frame cottage.
The brick building fronts *on Melpomene Street and occupies the entire width of the lot and most of its depth. It has two side entrances on South Rampart Street. The garage is situated immediately behind the brick building and immediately behind the garage and occupying the entire remainder of lot 4 is a small frame cottage. The garage and cottage front on South Rampart Street.
Mr. V. B. “Bob” Warner testified as an expert appraiser on behalf of the City. Mr. Louis J. Herbert testified as an expert appraiser for the defendants.
Mr. Warner appraised the brick building and cottage using both the cost approach and the income approach. He stated that he used these approaches because there had been no sales of comparable properties in the area. Mr. Herbert in appraising the buildings used the cost approach alone stating that no data was available for using the income approach.
Using the cost approach Mr. Warner arrived at a depreciated value of $8,478.00 for the brick building without the land while Mr. Herbert calculated its depreciated value at $12,465.00. Both used $10.00 per square foot as its replacement cost. The difference between the two appraisals lies *787 in the fact Mr. Warner depreciated the replacement cost by 85% (being 55% for depreciation plus 30% for obsolescence) while Mr. Herbert used a depreciation factor of 75% allowing nothing for obsolescence.
Mr. Warner testified that he deducted 30% for functional obsolescence because if you replaced the building you would not use the same type of stairs or bath fixtures and would have to put in air conditioning ducts and such things as gas outlets and heaters. Mr. Herbert disagreed as to obsolescence stating that only the basic building should be appraised and that to change the stairs and fixtures and put in air conditioning ducts would result in updating the building.
Mr. Warner calculated the replacement cost of the frame cottage, without the land, at $3,960.00 which he depreciated by 40% and arrived at a depreciated value of $2,-376.00. Mr. Herbert calculated the replacement cost of the cottage at $3,776.00 which he depreciated by 25% arriving at a depreciated value of $2,822.00. Both calculated the replacement cost at $8.00 per square foot. The main difference between them lies in the depreciation factor.
Whereas by using the cost approach Mr. Herbert gave the garage a depreciated value of $561.00, Mr. Warner gave it no value at all since in his opinion the garage was worthless.
In appraising the land Mr. Warner gave a separate value to the land occupied by the brick building and garage from that which he placed on the land occupied by the cottage. Since in his opinion the garage itself was worthless he added the area occupied by it to the area of the land occupied by the brick building and arrived at a land valuation for this combined area of $8,059.00 using $2.20 per square foot as a basis.
That portion of lot 4 which is occupied by the cottage fronting on South Rampart Street was appraised by Mr. Warner at $1,666.00. He pointed out that this portion measures 17' front on South Rampart Street but has a depth of only 33' (being the width of lot 4). He estimated the value of this portion of lot 4 at $175.00 per front foot arriving at a figure of $2,975.00 which he reduced to $1,666.00 on account of its shallow depth using the Milwaukee Depth Table.
Mr. Herbert, on the other hand, did not divide his land appraisal but instead appraised the entire area of lot 4 at approximately $3.50 per square foot giving lot 4 an overall land value of $14,755.00.
Mr. Warner gave no basis for his use of $2.20 per square foot in valuing the land occupied by the brick building and garage. Neither did he give any basis for valuing the land occupied by the cottage at $175.00 per front foot.
Mr. Herbert stated that in his opinion land in this area could not be acquired for $2.20 per square foot and in appraising the lot at $3.50 per square foot referred to several sales which he regarded as comparables in fixing land values. An examination of these sales reveals that all of them were sales of improved property and that no separate prices for the land were stated therein. The record reveals that there were no comparable sales of vacant land. However, Mr. Herbert testified that the improvements on several of the properties referred to by him were so old and in such bad condition that they had to be torn down and that the sales prices reflected that a substantial value was paid for the land which, in his opinion, amounted to approximately $3.50 per square foot.
By using the cost approach Mr. Warner arrived at a total value for the land and improvements of $16,550.00 for the brick building and $4,050.00 for the cottage making a total of $20,600.00. He then by using the income approach arrived at a valuation of $15,400.00 for the brick building and $3,-850.00 for the cottage for a total of $19,250.-00. After giving consideration to both approaches Mr. Warner’s final appraisal of the property was $19,850.00, being $16,- *788 000.00 for the brick building and $3,850.00 for the cottage.
Mr. Herbert’s appraisal of the entire property using the cost approach adds up to $30,600.00 which includes $561.00 for the garage which Mr. Warner testified had no value whatever. Mr. Herbert did not use the income approach, explaining that the property had been owned by the defendants’ family for over 50 years; that throughout the years the lower floor had been used by them as a second hand furniture store and that most of the upper floor had been used for furniture storage; that with the exception of a small apartment on the second floor the property had not been rented for over 50 years and there was no way to put a rental value on the building. He pointed out that in using the income approach Mr. Warner had to hypothesize a rent figure which he reduced by a vacancy factor of 5% and after deducting estimated annual expenses consisting of taxes, insurance, maintenance expense and a 6% management fee arrived at a figure which he capitalized at 12%. Mr. Warner gave no basis for any of the figures used by him.
Although the cottage had been rented Mr. Warner gave no basis for the other figures used by him in arriving at its value by the income approach.
We agree with Mr. Herbert’s testimony that the income approach could not properly be used under the circumstances of this case.
The difference between the appraisals made by the two appraisers results principally from the different depreciation factors used and from the valuation of the land. Both appraisers admit that the percentage of depreciation used is almost purely a matter of personal judgment. As to the land value, we are of the opinion that Mr. Herbert correctly valued the lot 4 as a whole since it was all one lot and was being acquired by the City as such. To divide the lot into two parcels, as Mr. Warner did, thereby allocating a small shallow lot to the frame cottage was improper in our opinion. The Trial Judge agreed with the valuation per square foot placed on the land by Mr. Herbert and we find no manifest error in his so doing.
It is argued on behalf of the City that the Trial Judge committed error by failing to give any weight to Mr. Warner’s testimony. While the Trial Judge accepted Mr. Herbert’s valuations it does not follow that he did not give full consideration to Mr. Warner’s testimony. As a matter of fact he agreed with Mr. Warner that the garage had no value.
Under the circumstances of this case the Trial Judge had to accept Mr. Warner’s valuation or that placed on the property by Mr. Herbert or else commit error by averaging the two. We find no manifest error in the Trial Judge’s acceptance of Mr. Herbert’s valuation.
The City also urges as error the failure of the judgment appealed from to contain any language conveying the property to the City of New Orleans.
We find that the judgment appealed from contains no direct language conveying the property to the City of New Orleans. It is simply a judgment in favor-of the defendants against the City “ * * * awarding the said defendants the sum of $30,039.00 for the property hereinafter described
* * * » In a later paragraph the judgment contains a description of the property prefaced by the statement: “The herein-above mentioned property is described as follows, to wit:”
The defendants-appellees take the position that the judgment as written is sufficient to convey title to the City upon payment of the compensation awarded, citing LSA-R.S. 19:14 and State of Louisiana *789 Through the Sabine River Authority v. Miller, 250 La. 668, 198 So.2d 397.
LSA-R.S. 19:14 reads as follows:
“If no appeal is taken from the judgment of the lower court, and the defendant refuses to accept payment of the amount adjudged, the deposit thereof in the registry of the court, subject to his order, entitles the plaintiff to the property described in the petition in the same manner as would a voluntary conveyance. The receipt of the clerk of court for the price shall vest the title in the person paying for the land, in the same manner as if it were paid to the owner in person.”
There is nothing in the Sabine River Authority case which decides the issue presented here, and we find no necessity for deciding it ourselves. We are of the opinion however that it would be better practice for the judgment to contain language expropriating the property and conveying title to the City upon payment of the amount awarded to the defendants and no harm will be done by recasting the judgment accordingly.
Defendants answered the appeal praying that the compensation award be increased by $561.00 representing the appraisal put on the garage by Mr. Herbert. Mr. Herbert did not testify as to the condition of the garage. The Trial Judge agreed with Mr. Warner’s testimony that the garage had no value except for the metal on the front of it. Defendants take the position that under the Constitution no property may be expropriated without compensation and that they should be compensated for the garage even if its only value lies in its metal front. Since the value of this metal is not shown we are unable to increase the award.
For the foregoing reasons the judgment is recast so as to read as follows:
“It is ordered, adjudged and decreed that the following described property to wit:
‘A certain lot of ground, together with all of the buildings and improvements thereon and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, located in the First District of New Orleans, designated by the No. 4 in Square No. 286, bounded by S. Rampart, Street (late Hercules), Sara-toga Street (late White), Melpomene and Terpsichore Streets, which forms the corner of Melpomene and S. Rampart Streets and measures 32' 11" 6'" front on Melpomene Street by 127' 9" in depth and front on S. Rampart Street. The improvements on said property bear the Municipal No. 1503-15 S. Rampart Street and 2000-02 Melpomene Street.
Acquired by Moses Lew, Sylvia Lew, Dora Lew and Jacob Lew by judgment of possession dated June 29, 1934 in the succession of Elias Lew, No. 208-049, C.D. C., registered C.O.B. 476, Folio 254 and by judgment of possession dated April 28, 1931 in the succession of Bella Glinky, wife of Elias Lew, No. 191-563, C.D.C., registered C.O.B. 461, Folio 177.’
be and the same is hereby expropriated and adjudged to the City of New Orleans, plaintiff herein, in full ownership upon the payment by it to the defendants, Moses Lew and Dora Lew, of the sum of $30,039.00 plus the sum of $19.50 representing the cost of certified copies of the acts of sale, together with legal interest thereon from date of this judgment until paid and all costs of Court.
It is further ordered, adjudged and decreed that the expert witness fee of Mr. Louis J. Herbert be fixed in the sum of $200.00 and taxed as costs herein.”
As so recast the judgment is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Judgment recast and affirmed.